*Execution Version*

## SENIOR SECURED CREDIT NOTE

$500,000.00                                                                    December 22, 2021

The undersigned, SOURCEWATER, INC., a Delaware corporation d/b/a Sourcenergy ("Borrower"), for value received, without grace, in the manner, on the dates and in the amounts herein stipulated, promises to pay to the order of Energy Debt Holdings LLC, a Texas limited liability company ("Lender"), or any of its successors or assigns, at PO Box 249, Oklahoma City, Oklahoma 73101, or at such other place as the holder of this Senior Secured Credit Note (this "Note") may hereafter designate, the sum of all advances made by Lender to Borrower pursuant to the terms of this Note, which advances shall be, and shall not exceed in the aggregate, FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) (the "Borrowing Base"), recorded and detailed on the advance schedule attached hereto (as may be updated from time to time in accordance herewith, the "Advance Schedule"), in lawful money of the United States of America, together with interest accruing from the date of each advance at the interest rate herein specified.

1.     Interest Rate.

(a)     Interest on the outstanding and unpaid principal balance of each advance made hereunder shall be computed at a rate equal to twelve percent (12%) per annum.

(b)     Unless otherwise specified below, interest shall compound on a monthly basis.

(c)     All past due principal and interest payable under this Note, whether due as a result of acceleration of maturity or otherwise, shall bear interest from date due until paid at an interest rate equal to fifteen percent (15%) per annum.

2.     Loan.

(a)     It is expressly agreed that this Note evidences a senior debt up to and including the Borrowing Base. The Note is not revolving. Accordingly, the total of all advancements of principal recorded on the Advance Schedule shall not exceed the Borrowing Base, and once repaid cannot be borrowed upon again. It is contemplated that the principal of this Note may be advanced to Borrower in a series of advancements to be made from time to time. In particular, advances hereunder may be made by Lender or the holder hereof at the written request of any officer or authorized agent of Borrower transmitted at least four (4) weeks prior to the distribution of each such requested advance amount. The amounts of the advances and payments shall be promptly and accurately recorded by Lender on the Advance Schedule and shall be binding upon Borrower as to the amount owed by Borrower. Borrower may only borrow up to the amount of the Borrowing Base and the total advances shall not exceed the Borrowing Base. This Note may be paid partially or in full without penalty from time to time. The Note shall be in full force and effect, if and while any amounts have been advanced and are still outstanding.

(b)     Borrower hereby authorizes Lender to endorse and record on the Advance Schedule or any continuation thereof, all advances made to Borrower hereunder which endorsements shall be *prima facie* evidence as to the outstanding principal amount of this Note.

(c)     Under no circumstances shall the unpaid principal amount hereof at any time, for any reason, exceed the Borrowing Base, Borrower further covenants and agrees to pay any excess principal amount forthwith upon demand.  Such excess principal amount shall in all respects be deemed to be included among the loans or advances made pursuant to the other terms of this Note and shall bear interest at the rate hereinabove stated.

(d)     This Note is secured by certain assets and property as set forth in the Security Agreement of even date herewith.

(e)     In the event (i) Borrower enters into a transaction or series of related transactions in which a person, or a group of related persons, acquires from Borrower securities (convertible or otherwise) representing more than fifty percent (50%) of the outstanding voting power of Borrower; (ii) Borrower enters into a transaction or series of related transactions to sell all or substantially all of its assets; (iii) Borrower enters into a transaction or series of related transactions to borrow funds, insofar as any such transactions are subordinate to this Note and Borrower has obtained prior, written consent from Lender (consent not to be unreasonably withheld) in an amount over five hundred thousand and 00/100 dollars ($500,000) or (iv) raise capital from a third-party or third parties for any amount, however de minimus, Borrower agrees to apply the proceeds received by Borrower to the outstanding balance of this Note, so long as doing so would not violate applicable law. Specifically, all proceeds received by Borrower from any future Economic Injury Disaster Loan ("EIDL") shall first be applied to the outstanding balance of this Note in accordance with this section.

(f)     The indebtedness evidenced by this Note shall be senior to all other indebtedness of Borrower and, in no event shall any transaction listed in Section 2(e) or any other indebtedness or obligation of Borrower (including, but not limited to, the Adler Note (as defined below)) cause this Note to rank junior or be subordinated, save and except for the EIDL entered into by Borrower with an effective date of May 16, 2020, and as modified or may be modified.

(g)     Borrower may utilize advances made hereunder as necessary for the operation of its business, which may include repaying up to $50,000 advanced by John Hoskinson to Borrower in accordance with the Revolving Security Note entered into between Borrower and Joshua Adler, effective December 10, 2020 (the "Adler Note").

3.      Payments.

(a)     For each advance made hereunder, as recorded and detailed on the Advance Schedule, the unpaid principal balance of this Note with accrued but unpaid interest thereon shall be due and payable on or before March 11, 2023 (the "Maturity Date").  Borrower shall, at minimum, submit payment to Lender in the amount of the accrued interest on a fiscal quarter basis, with the first such payment being due April 1, 2022.

(b)     Borrower reserves the right of prepaying the principal of this Note, in full or in part, at any time without the payment of any prepayment premium or fee. Interest accrued but unpaid with respect to any amount prepaid shall be due and payable on the date of such prepayment. Any payment made shall be applied by Lender first to all accrued unpaid interest and then to any advanced principal.

(c)     All payments or prepayments made under this Note shall be made to Lender no later than 12:00 p.m., Houston, Texas time, in same day funds. Any payment received by Lender after such time shall be considered for all purposes (including the calculation of interest) as having been made on the next day. If any payment or required prepayment of principal or interest shall become due on a day that is not a day on which commercial banks in the city of Houston, Texas are open for business, such payment shall be due on the next succeeding Business Day and such extension of time shall be included in computing interest due with respect to such payment. A check, draft, money order, or other instrument given in payment for any payment or prepayment made hereunder may be accepted by Lender hereof and handled for collection in the customary manner, but the same shall not constitute payment hereunder or diminish

any rights of Lender except to the extent that actual cash proceeds of such instrument are unconditionally and irrevocably received by Lender.

4.      Default. It is expressly agreed and understood that time is of the essence concerning this Note, and that (a) if default shall be made in any payment of principal or interest on this Note as the same shall become due and payable; (b) if there is a default in any of the terms, covenants, agreements, conditions or provisions set forth in this Note any agreement, instrument or document given to secure this Note or executed in connection with this Note; (c) should either Borrower or any acceptor, endorser, surety, guarantor, accommodation party or other person now or hereafter primarily or secondarily liable upon or for the payment of all or any part of this Note (each such person being hereinafter referred to as an "other liable party"), become insolvent immediately following the first advance hereunder or while any amount under this Note remains outstanding or commit an act of bankruptcy or make an assignment for the benefit of creditors or authorize the filing of a voluntary petition in bankruptcy or should a receiver of any of the property of Borrower or any other liable party be appointed; (d) should involuntary bankruptcy proceedings be filed or threatened against either Borrower or any other liable party; (e) if a writ or order of attachment or garnishment shall be issued or made against any property of Borrower or any other liable party; or (f) if Borrower or any other liable party shall be dissolved, wound up, liquidated or otherwise terminated, or becomes a party to any merger or consolidation without the written consent of the holder hereof or if Borrower or any other liable party shall sell substantially all of its assets without the written consent of Lender; then in any such event (each of such events described in any of clauses (a) through (f) of this Section 4, being an "Event of Default"), Lender, at its sole option, may (x) declare the entirety of this Note, together with all accrued but unpaid interest hereon, immediately due and payable, without notice, protest, demand, presentment, notice of intent to accelerate or notice of acceleration all of which are hereby expressly and specifically waived by Borrower and all other liable parties, and (y) pursue any and all other rights, remedies and recourses available to Lender, at law or in equity, and failure to exercise either said option shall not constitute a waiver on the part of Lender of the right to exercise either said option at any other time.

5.      Notwithstanding Section 4, if an Event of Default described in clauses (a) or clause (b) of Section 4 shall occur, prior to Lender exercising any of its options set forth in clauses (x) and (y) of Section 4 or taking any other adverse action or remedies against Borrower (collectively, "Remedies"), Lender and Borrower agree that (a) Lender will notify the Board of Directors of Borrower in writing of such default and that Borrower shall have sixty (60) days from the date of Borrower's receipt of such notice to cure or correct such Event of Default; (b) during such 60-day time period, Lender shall not pursue any of his Remedies; and (c) Borrower will promptly notify all holders of its preferred stock and convertible promissory notes (each a "Cure Party" and collectively, the "Cure Parties") in writing of such Event of Default in order to permit one or more Cure Parties to cure or correct such Event of Default; *provided, however,* that if such Event of Default would be cured or corrected by the payment of amounts due to Lender hereunder, the Cure Parties will have the option to cure and correct such Event of Default by paying all amounts due to Lender hereunder to Borrower (who in exchange will pay Lender such amounts) in exchange for a promissory note from Borrower in substantially the same terms and conditions as this Note (e.g. a promissory note secured by the assets of Borrower, with a similar interest rate and maturity date) or under other terms and conditions as Borrower and such Cure Parties may agree.

6.      Collection Costs. If this Note is not paid at maturity, however such maturity may be brought about, and this Note is placed in the hands of an attorney for collection or if collection by suit or through the probate court, bankruptcy court, or by any other legal or judicial proceeding is sought, Borrower agrees

to pay all expenses incurred, including reasonable attorneys' fees, all of which shall become a part of the principal hereof.

7.  <u>Waiver</u>. Except as set forth in <u>Section 5</u>, Borrower expressly waives presentment and demand for payment, notice of default, notice of intent to accelerate maturity, notice of acceleration of maturity, protest, notice of protest, notice of dishonor, and all other notices and demands for which waiver is not prohibited by law, and diligence in the collection hereof. No delay or omission of Lender in exercising any right hereunder shall be a waiver of such right or any other right under this Note.

8.  <u>Usury</u>. It is the intention of Borrower and Lender to conform strictly to applicable usury laws. Accordingly, notwithstanding any provision to the contrary in this Note, the aggregate of all interest and any other charges or consideration constituting interest under applicable usury law that is taken, reserved, contracted for, charged or received under this Note, or otherwise in connection with this loan transaction shall under no circumstances exceed the maximum amount of interest allowed by the usury law applicable to this loan transaction. If any excess interest charge or consideration in such respect is taken, reserved, contracted for, charged, received or provided for, or shall be adjudicated to be so taken, reserved, contracted for, charged, received or provided for, in this Note, whether by the terms of this Note or because the maturity of the indebtedness evidenced by this Note is accelerated for any reason, or in the event of any required or permitted prepayment, then in any such event (a) the provisions of this <u>Section 8</u> shall govern and control; (b) neither Borrower nor Borrower's legal representatives, successors or assigns or any other liable party shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum interest permitted by applicable law (the "<u>Maximum Rate</u>"); (c) any excess shall be deemed a mistake and cancelled automatically and, if theretofore paid, shall be credited on this Note by Lender (or if this Note shall have been paid in full, refunded to Borrower); and (d) the effective rate of interest shall be automatically subject to reduction to the Maximum Rate allowed as the usury law may now or hereafter be construed by courts of appropriate jurisdiction. Without limiting the foregoing, all calculations of the rate of interest taken, reserved, contracted for, charged, received or provided for under this Note, which are made for the purpose of determining whether the interest rate exceeds the Maximum Rate shall be made, to the extent allowed by law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the loan evidenced hereby, all interest at any time taken, reserved, contracted for, charged, received or provided for under this Note.

9.  <u>Covenants.</u> Unless Lender shall otherwise consent in writing, until payment in full of this Note and the satisfaction of all obligations arising under this Note and any and all collateral or other loan documents related thereto, Borrower agrees that:

(a)  Borrower will not incur, create, assume, have outstanding, guarantee or otherwise be or become, directly or indirectly, liable in respect of any indebtedness, obligations or liabilities (collectively, "<u>Indebtedness</u>"), without written consent from Lender, except (i) Indebtedness arising pursuant to this Note, the Adler Note or the EIDL; (ii) other Indebtedness to Lender; (iii) unsecured accounts payable that (1) are incurred in the ordinary course of business, (2) are payable on terms customary in the trade, and (3) are to be paid within 120 days of the date of invoice or are being contested in good faith; (iv) taxes, assessments or other government charges which are not yet due or are being contested in good faith; or (v) Indebtedness not to exceed $250,000 in the aggregate at any time outstanding.

(b)  Borrower will not (i) grant, create, incur, permit or suffer to exist any lien (except Permitted Liens) upon any of its property, revenues, or assets, whether now or hereafter acquired, or (ii) agree with any person (other than in this Note and the other Loan Documents) that Borrower will not grant, create,

incur, permit or suffer to exist any lien upon any of its property or assets, except for Permitted Liens. For purposes of this subparagraph, "Permitted Liens" means and shall consist of (i) liens granted to Lender to secure the Indebtedness to Lender, (ii) pledges or deposits made to secure payment of workers' compensation insurance (or to participate in any fund in connection with worker's compensation insurance), unemployment insurance, pension or social security programs, (iii) liens imposed by mandatory provisions of law such as carrier's, materialmen's, mechanics', warehousemen's, landlord's and similar liens arising in the ordinary course of business, securing Indebtedness not yet due, (iv) liens for taxes, if the same are not yet due and payable, (v) liens arising in the ordinary course of business from pledges or deposits to secure public or statutory obligations, deposits to secure (or in lieu of) surety, stay, appeal or customs bonds, and deposits to secure the payment of taxes, and (vi) encumbrances consisting of zoning restrictions, easements, rights-of-way, or restrictions, provided that such items do not impair the use or ownership of any property for the purposes intended, and none of which are violated by existing or proposed structure or land use.

(c)     Borrower will not consent to or permit any alteration, amendment, modification, release, waiver or termination of any material agreement to which Borrower is a party in any manner which would have a Material Adverse Effect or which could impair any lien of Lender. For purposes of this subparagraph, "Material Adverse Effect" means any circumstance or event which (i) has any material adverse effect whatsoever upon the validity, performance, perfection or enforceability of any of the Loan Documents or the financial condition or business operations of Borrower, (ii) materially impairs the ability of Borrower to fulfill its obligations under the Loan Documents, or (iii) results in or causes an Event of Default. For clarity, a modification of the EIDL shall not be considered to have a Material Adverse Effect.

(d)     Borrower will not sell, assign, exchange, transfer, lease, sublease or discount any properties yielding proceeds in excess of ten thousand and 00/100 dollars ($10,000) without first applying the proceeds of such sale or sales to the outstanding balance of this Note.

(e)     Borrower shall not directly or indirectly declare or make, or incur any liability to make, or set aside any sum of money or assets to make, any distributions or dividends other than distributions for the purpose of and only in amounts necessary to pay the income tax liability of Borrower's members with respect to Borrower's income, and Borrower shall not repurchase, redeem, or otherwise acquire any issued and outstanding ownership units of Borrower or any subsidiary of Borrower, without Lender's consent which shall not be unreasonably withheld.

(f)     Borrower shall not, and Borrower shall not permit any of its subsidiaries to, enter into, or cause, suffer or permit to exist any arrangement or contract with any of their other affiliates unless such arrangement or contract (i) is fair and equitable to Borrower or such subsidiary, as applicable, (ii) is an arrangement or contract of the kind which would be entered into by a prudent person in the position of Borrower or such subsidiary, as applicable, with a person which is not one of its affiliates, and (iii) is not a loan, advance or other extension of credit, which when added together with all other loans, advances and extensions of credit to other affiliates of Borrower during any fiscal year, exceeds $50,000, without Lender's consent which shall not be unreasonably withheld. Borrower shall not make, incur, assume or suffer to exist any investment in any other person, except in the ordinary course of business, except as specifically set forth in and as existing on the date of its September 30, 2021 balance sheet previously delivered to Lender; provided, however, that no investment otherwise permitted in this subparagraph (g)

shall be permitted to be made if, immediately before or after giving effect thereto, any Event of Default shall have occurred and be continuing.

10.    CHOICE OF LAW AND VENUE; SUBMISSION TO JURISDICTION; SERVICE OF PROCESS.

(a)    THE VALIDITY OF THIS NOTE, ITS CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT, AND THE RIGHTS OF THE PARTIES HERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS (WITHOUT REFERENCE TO THE CHOICE OF LAW PRINCIPLES THEREOF). THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS NOTE SHALL BE TRIED AND LITIGATED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY OF HARRIS, STATE OF TEXAS.

(b)    BORROWER AND LENDER HEREBY SUBMIT FOR THEMSELVES AND IN RESPECT OF THEIR PROPERTY, GENERALLY AND UNCONDITIONALLY, TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVE, TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO ASSERT THE DOCTRINE OF *FORUM NON CONVENIENS* OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.

(c)    NOTHING IN THIS NOTE SHALL BE DEEMED OR OPERATE TO AFFECT THE RIGHT OF LENDER OR BORROWER TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW, OR TO PRECLUDE THE ENFORCEMENT BY LENDER OR BORROWER OF ANY JUDGMENT OR ORDER OBTAINED IN SUCH FORUM OR THE TAKING OF ANY ACTION UNDER THIS NOTE TO ENFORCE SAME IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION.

11.    **WAIVER OF JURY TRIAL. BORROWER AND LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. BORROWER AND LENDER REPRESENT THAT EACH HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES HIS OR ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

12.    Notices.  Unless otherwise specifically provided herein, all notices shall be in writing addressed to the respective party as set forth below, and may be personally served, emailed or sent by overnight courier service or United States mail:

If to Borrower:             Sourcewater, Inc. dba Sourcenergy
                            ATTN: Joshua Adler, CEO
                            1801 Main Street, Suite 1300
                            Houston, Texas 77002
                            Email: Josh@sourcenergy.com


With a copy, which shall not constitute notice, to:

                            R. Reese & Associates, PLLC
                            5555 San Felipe, Suite 2000
                            Houston, Texas 77056
                            Attn:  Rachel Reese, Esq.

Email: rreese@rreeselaw.com

If to Lender:              Energy Debt Holdings LLC
                           PO Box 249
                           Oklahoma City, Oklahoma 73101
                           ATTN: North Whipple
                           Email: nwhipple@bisonok.com, kblake@bisonok.com

Any notice given pursuant to this Section shall be deemed to have been given: (a) if delivered in person, when delivered; (b) if delivered by fax or electronic mail, on the date of transmission if transmitted on a Business Day before 4:00 p.m. at the place of receipt or, if not, on the next succeeding Business Day; (c) if delivered by overnight courier, two (2) days after delivery to such courier properly addressed; or (d) if by United States mail, four (4) Business Days after depositing in the United States mail, certified mail, return receipt requested with postage prepaid and properly addressed. Any party hereto may change the physical address, email address, or fax number at which such party is to receive notices hereunder by notice to the other party in writing in the foregoing manner.  For the purposes of this Note, "Business Day" shall mean any day that is not a Saturday, Sunday, or other day on which national banks are authorized or required to close.

13.      Legal Representation.  Each party hereto hereby acknowledges and agrees that such party has had the opportunity to consult with and obtain the advice and counsel of an attorney of such party's own choosing.  In this regard, Lender hereby further acknowledges, agrees and consents that the law firm of R. Reese & Associates, PLLC acts as legal counsel solely to Borrower with respect to this Note, and that such firm does not act as legal counsel to Lender with respect to this Note.

14.      Construction.  Any rule of construction that a document is to be construed against the drafting party shall not be applicable this Note. The parties hereto agree that the terms of this Note are the product of negotiation of the parties, and that this Note shall not be construed against any party by virtue of the fact that one party may have drafted this Note.

15.      Binding Effect.  The obligations under this Note shall be binding upon Borrower and Lender and their respective successors and assigns.

16.      Assignment.  Neither party hereto may assign, pledge, hypothecate or otherwise transfer this Note to another party without the prior written consent of the other party hereto.

17.      Captions.  The captions in this Note are inserted for convenience only and are not to be used to limit the terms herein.

18.      Amendments.  This Note shall not be amended or otherwise modified unless such is documented by written instrument signed by both Borrower and Lender.

19.      Severability.  In case any provision in or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

20.      Counterparts.  This Note may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same Note. Delivery of an

executed counterpart of this Note by facsimile or portable document format (pdf) shall be equally as effective as delivery of an original executed counterpart of this Note. Any party delivering an executed counterpart of this Note by facsimile or portable document format (pdf) also shall deliver an original executed counterpart of this Note but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, or binding effect hereof.

[*Signature Page Attached*]

IN WITNESS WHEREOF, the parties hereto have entered into and executed this Note as of the 22nd day of December, 2021, to be effective as of the date first above written.

**BORROWER:**

SOURCEWATER, INC., a Delaware corporation

By: _____

Name: Joshua Adler

Its: CEO

**LENDER:**

Energy Debt Holdings LLC, a Texas limited liability company

By: _____

Name: _____

Its: _____

*Signature Page to Senior Secured Credit Note*

IN WITNESS WHEREOF, the parties hereto have entered into and executed this Note as of the 22nd day of December, 2021, to be effective as of the date first above written.

**BORROWER:**

SOURCEWATER, INC., a Delaware corporation

By:_____

Name: Joshua Adler

Its: CEO

**LENDER:**

Energy Debt Holdings LLC, a Texas limited liability company

By:_____

Name: Jay Whipple

Its: Manager

*Signature Page to Senior Secured Credit Note*

**ADVANCE SCHEDULE**

| Advance Number | Date Advance Was Made | Principal Amount of Advance |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |